89 F.3d 839
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Ann R. ULCZYCKI, Executor of the Estate of Joseph Ulczycki,
Plaintiff-Appellant,
v.
UNITED STATES of America, Defendant-Appellee.
 No. 96-1020.
 United States Court of Appeals, Seventh Circuit.
 Argued June 4, 1996.
Decided June 12, 1996.
 
 Before BAUER, CUDAHY and EASTERBROOK, Circuit Judges.
 
 ORDER
 
 1
 Joseph Ulczycki, 69 years old, was admitted to the Hines Veterans Administration Hospital on April 14, 1991, with nausea, abdominal pain, and bloody diarrhea. A heavy smoker, Ulczycki had a history of coronary artery disease (and other vascular difficulties) and peptic ulcers. Endoscopic examination revealed inflammation and ulcerations; a physician prescribed acid-suppression medication. Ulczycki was released on April 19 after the symptoms abated. Two days later, he was back with abdominal pain and nausea. The recurring symptoms led attending physicians to suspect a deficiency in mesenteric blood supply.
 
 
 2
 On April 24 the Hospital performed an angiogram, the best diagnostic tool for vascular problems of the bowel. For people in Ulczycki's condition, the mortality rate from this procedure is three to five percent. Ulczycki survived and was diagnosed as suffering from chronic mesenteric ischemia: blockage of the arteries supplying blood to the lower intestine. All three of the major arteries were occluded, but the physicians believed that collateral blood supply was well-developed.
 
 
 3
 Surgery to revascularize the intestines lasts five to eight hours and is very risky for someone in Ulczycki's condition. Before they would consider performing this surgery, physicians ordered cardiac studies, seeking to learn whether Ulczycki could stand the procedure. A cardiac stress test was administered on April 26, and Ulczycki's performance led Dr. Fred Littooy, chief of peripheral vascular surgery at the Hospital, to conclude that a revascularization operation could succeed. The operation was scheduled for Tuesday, April 30.
 
 
 4
 Obstruction of the collateral blood sources turns chronic mesenteric ischemia acute. Deprived of blood, the lower intestine dies in approximately six hours. That is roughly the time it takes to perform the operation, so unless the acute phase is detected almost immediately, it is impossible to save the organ--and, as there is no substitute for a lower intestine, impossible to save the patient's life. Dr. Littooy told Dr. Michael Cohen, a first-year intern, to monitor Ulczycki over the weekend and relate any substantial changes in his condition. At 6 p.m. on Saturday, April 27, Ulczycki reported sharp abdominal pain and tenderness, symptoms that could represent a flareup of peptic ulcers or a reduction in blood flow. Cohen believed that ulcers were at work and prescribed an antacid; later he prescribed a painkiller.
 
 
 5
 Throughout the evening of April 27 and the early morning of April 28, Ulczycki's vital signs were stable and close to his norms. Beginning at 6 a.m. on April 28, Ulczycki's temperature, blood pressure, pulse, and respiration increased sharply. By that afternoon, it was clear from both his vital signs and an x-ray taken about 10:30 a.m. that Ulczycki's condition had entered the acute stage. Dr. Littooy was summoned, and Ulczycki was in the operating room (at Loyola University Hospital, across the street) by 5:30 p.m. Littooy found the bowel dead. Ulczycki died at 4 a.m. on April 29. His estate filed this suit under the Federal Tort Claims Act, contending that the chronic mesenteric ischemia should have been detected earlier, that surgery should have been completed before April 27, and that the staff was in any event negligent when matters degenerated on April 27 and 28.
 
 
 6
 Immediately after the end of a bench trial, the district judge ruled for the United States. The judge concluded that the decision not to perform an angiogram during the first admission was not negligent, that the physicians acted prudently in doing a cardiac workup after the diagnosis of chronic mesenteric ischemia, that Ulczycki's condition did not appear to be so serious on April 26 that immediate surgery was imperative, that careful physicians would have diagnosed acute mesenteric ischemia no earlier than 6 a.m. on April 28, and that by then even immediate surgery would not have succeeded--making irrelevant the fact that surgery did not commence for 12 hours. The estate appeals. We affirm, because none of the findings and inferences can be called clearly erroneous. See Anderson v. Bessemer City, 470 U.S. 564 (1985).
 
 
 7
 If an angiogram had been performed during Ulczycki's first stay at the Hospital, revascularization would have been accomplished before the condition became acute. Testifying as the estate's expert witness, Dr. Kenneth Bennett opined that it was negligent to discharge Ulczycki without performing an angiogram. All of the attending physicians, plus Dr. John Weigelt, a surgeon on the faculty of the University of Minnesota, disagreed. These witnesses believed that an angiogram is sufficiently risky, and chronic mesenteric ischemia sufficiently rare, that the procedure is not justified unless the symptoms persist and other options have been ruled out. The Hospital's attending gastroenterologist added that the endoscopy findings did not depict a classic presentation of chronic mesenteric ischemia. The district judge accepted this view, as he was entitled to do.
 
 
 8
 Dr. Bennett conceded that Ulczycki was too dehydrated on his second admission to perform an angiogram until April 23. The district judge accepted testimony of the defense witnesses that it was prudent to wait until April 24, after which still more time passed during the cardiac workup. Because Dr. Littooy concluded that surgery was not urgent, and therefore set the operation for his next regular surgical day at the Hospital (April 30), it made no difference whether the angiogram was done on April 23 or 24; surgery would have been scheduled for April 30 anyway.
 
 
 9
 Was that scheduling decision itself negligent? All witnesses agreed that acute mesenteric ischemia is very likely to be fatal, so surgery is indicated following a diagnosis of chronic mesenteric ischemia. But how soon is the condition likely to become acute? One year plus or minus six months? One month plus or minus one week? One week plus or minus four days? These imply very different schedules. If a patient in Ulczycki's state ordinarily has a six-month period of safety (though discomfort), then it makes sense to do the surgery in the regular course--for the work of a rested surgeon, collaborating with the regular surgical team, is more likely to succeed than is a rush job. An eight-hour operation is not performed on the spur of the moment except in an emergency. But if a condition such as Ulczycki's was likely to become acute within days, then it would have been negligent to delay surgery as Dr. Littooy planned to do.
 
 
 10
 Unfortunately, the record does not contain any epidemiological data from which the court could have made this judgment. What it does contain is the competing beliefs of Drs. Bennett, Littooy, and Weigelt. Bennett thought the condition urgent; Littooy and Weigelt thought that Ulczycki was stable, with well-developed collateral blood supply, and therefore not at immediate risk. With benefit of hindsight, we know that the risk was greater than Dr. Littooy thought at the time (or perhaps the risk was small, but Ulczycki was an outlier in the statistical distribution). But the district judge did not commit clear error in accepting the testimony of Drs. Littooy and Weigelt that the short-term risk as it was knowable at the time appeared low, making it advisable to operate in the regular course rather than immediately.
 
 
 11
 That leaves only the question whether the Hospital should have taken Ulczycki's pain on April 27 as the sign of an impending (if not actual) acute condition, rather than as a flareup of his ulcers. All of the physicians agreed that it is very hard to diagnose the acute state, so leaving matters in the hands of an intern was questionable. But the more experienced physicians (other than Bennett) testified that, had they been on the scene before 6 a.m. on Sunday, they would not have diagnosed the acute condition.
 
 
 12
 Littooy testified that he would have begun an operation as soon as possible after Ulczycki's vital signs shifted at 6 a.m. on April 28. We may assume that Cohen was negligent in not informing Littooy immediately of this development. But the district judge found, again with support in the record, that by 6 a.m. it was too late. When acute mesenteric ischemia sets in, death is almost certain; that is why the estate stresses the need for emergency surgery after a diagnosis of chronic mesenteric ischemia. Dr. Bennett testified that if an operation had been "done" by 9 or 10 a.m. on April 28, Ulczycki might have survived. The estate argues on appeal that this means that the Hospital had three to four hours to save Ulczycki and should have begun the operation immediately. The district court apparently understood "done" to mean "completed"--for until the end of the operation, no blood is supplied to the bowel. Notice at 6 a.m. could not have led to an operation completed by 10 a.m. under any circumstances. The district court's understanding of "done" is consistent with other uses of that word in the record; and at all events one reading of an ambiguous word over another cannot be called clearly erroneous.
 
 
 13
 AFFIRMED.